**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JEROME FULLER, <br><br> *Defendant*. | No. 18-cr-54-ACR-MAU |

## REPORT AND RECOMMENDATION

On July 10, 2024, the District Court referred this matter to this Court to conduct a hearing and prepare a report and recommendation regarding Defendant Jerome Fuller's ("Mr. Fuller") alleged supervised release violations. *See* Min. Order (July 10, 2024).[1]  In petitions dated July 8, 2024 ("Original Petition") and April 28, 2025 ("Updated Petition"), the United States Office of Probation ("Probation") alleged that Mr. Fuller violated five of his conditions of supervised release.  The Court held a substantive hearing on July 10, 2025.  Min. Entry (July 10, 2025).  Upon consideration of the Parties' positions and the relevant sentencing factors, this Court: 1) finds that Mr. Fuller has violated one of the terms of his supervised release by using controlled substances on May 3, 2023, July 15, 2023, March 12, 2024, and December 16, 2024; 2) recommends that the District Court deny the requests of the Government and Probation to sentence Mr. Fuller to an additional term of incarceration; and 3) further recommends that the District Court order that Mr. Fuller continue his supervised release until his term expires on October 12, 2025.

---

[1]     Under Local Criminal Rule 32.1(e), a district judge may delegate a hearing on an alleged violation to a magistrate judge.  *See* LCrR 32.1(e).  The magistrate judge "shall file written findings and recommendations" and the district judge shall make a "de novo determination of those portions of the magistrate judge's report to which objections are made and may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate judge." *Id.*  The district judge may rule based on the record developed before the magistrate judge or consider additional evidence.  *See id.*

## BACKGROUND

I.     **Initial Sentencing and Alleged Supervised Release Violations**

On May 22, 2018, Mr. Fuller pleaded guilty to distribution of phencyclidine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  ECF No. 12.  On August 16, 2018, the District Court sentenced him to sixty-three months of imprisonment and three years of supervised release.  ECF No. 20. His term of supervised release began on October 13, 2022 and is set to expire on October 12, 2025. ECF No. 38 at 1.[2]

On July 8, 2024, Probation filed the Original Petition, in which it alleged five violations. ECF No. 38.  According to Probation, Mr. Fuller had:

- Failed to report to his supervising officer as instructed;

- Used controlled substances (Fentanyl, Norfentanyl, and Cannaboids);

- Failed to submit to substance abuse testing;

- Possessed controlled substances (Fentanyl, Norfentanyl, and Cannaboids); and

- Failed to comply with mandated substance abuse treatment.

*Id.*

On September 5, 2024, Mr. Fuller appeared for an initial hearing on the Original Petition. Min. Entry (Sep. 5, 2024); *see also* ECF No. 40.  At that hearing, the Parties agreed that Mr. Fuller should be evaluated for potential inpatient substance abuse treatment.  ECF No. 40.  The next day, Mr. Fuller completed an intake interview with the treatment facility Samaritan Inns.  *Id.*  The facility agreed to accept Mr. Fuller for a twenty-eight-day inpatient program.  *Id.*  The Court ordered Mr. Fuller released to Samaritan Inns for purposes of attending the program.  Min. Entry (Sep. 9, 2024); ECF No. 40.

---

[2]     Citations are to the page numbers in the ECF headers.

## II.        Mr. Fuller's Progress on Release

Most of Probation's allegations stemmed from Mr. Fuller's substance use disorder.  Before scheduling a substantive revocation hearing and in light of the fact that there were no allegations that Mr. Fuller committed any new crimes on release, the Court found it appropriate to give Mr. Fuller the opportunity to seek treatment.  Thus, with the Parties largely in agreement, the Court deferred the substantive hearing and monitored Mr. Fuller's progress through a series of status conferences.

On September 30, 2024, the Parties reported that Mr. Fuller left Samarian Inns early.  ECF No. 43 ¶ 2.  After leaving the program, Mr. Fuller enrolled in a detox program at the Psychiatric Institute of Washington.  *Id.*  He then transferred to Federal City Recovery Services ("Federal City") to begin another twenty-eight-day treatment program.  *Id.*

At a status conference on October 28, 2024, the Parties reported that Mr. Fuller had completed the Federal City program.  *See* Min. Entry (Oct. 28, 2024).  Further, Mr. Fuller intended to enroll in an outpatient program, which would also help him find employment.  Defense counsel and Probation disagreed on where Mr. Fuller was living.  Defense counsel stated that Mr. Fuller was living with his aunt, whereas Probation stated that its records reflected a different address. The Court ordered the Parties to attempt to resolve the residence issue together and to return for a status conference in December.

At the December 2024 status conference, Probation reported three issues with Mr. Fuller's compliance.  *See* Min. Entry (Dec. 17, 2024).  First, Mr. Fuller tested positive for fentanyl on one occasion.  Second, Mr. Fuller failed to enroll in an outpatient treatment program.  Third, Probation still could not verify Mr. Fuller's residence.  Upon hearing from all Parties, the Court concluded that some of these problems arose because defense counsel, Probation, and Mr. Fuller had failed to communicate with each other.  The Court ordered the Parties to file a status report in two weeks

with an update on Mr. Fuller's residence and enrollment in an outpatient program. *See* Min. Order (Dec. 17, 2024). The Court also ordered the Parties to appear for another status conference in early February. *See id.*

On December 30, 2024, the Parties jointly reported that they had resolved the issues with Mr. Fuller's residence. ECF No. 47 ¶ 2. The Parties further reported that Probation directed Mr. Fuller to appear at a later date for assessment for potential outpatient treatment. *Id.* ¶ 3.

At the status conference on February 3, 2025, the Parties advised that some but not all issues had been resolved. *See* Min. Entry (Feb. 3, 2025). On the one hand, Mr. Fuller had enrolled in an outpatient treatment program and was in stable housing. On the other hand, Probation had been unable to obtain another drug test since December 2024. Defense counsel represented that Mr. Fuller had provided drug tests to his work training program. The Court reminded Mr. Fuller that, even if true, he was required to report specifically to Probation for drug testing.

On February 7, the Parties jointly reported that Mr. Fuller provided Probation with a negative drug test. ECF No. 48 ¶ 2. On February 24, however, the Parties reported that Mr. Fuller missed a drug test on February 18. ECF No. 49 ¶ 3. Mr. Fuller claimed that his phone had been stolen and that he did not receive Probation's text message. *Id.* In a subsequent report, Probation explained that it visited Mr. Fuller at his job site on March 4, but Mr. Fuller could not provide a sample. ECF No. 50 at 1. Although Probation then directed Mr. Fuller to be tested at the Probation office on both March 4 and March 6, Mr. Fuller failed to appear on either date. *Id.* at 1–2.

At a status conference on March 17, 2025, the Court explained that, although it had given Mr. Fuller multiple opportunities and warnings, Mr. Fuller's failure to comply with drug testing compelled the Court to set a revocation hearing. *See* Min. Entry (Mar. 17, 2025).

### III.    Updated Petition

At the Court's direction, Probation filed an Updated Petition to include the complete set of alleged violations against Mr. Fuller.  ECF No. 53.  Those allegations include:

| Violation No. | Condition | Allegation |
|---|---|---|
| 1. | After initially reporting to the probation officer, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed. (Standard Condition #2) | Failing to report to his supervising officer as instructed on December 12, 2023, March 6, 2024, March 29, 2024, May 10, 2024, May 31, 2024, June 7, 2024, June 14, 2024, June 20, 2024, June 21, 2024, June 28, 2024 and July 5, 2024. |
| 2. | You must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court. (Mandatory Condition) | Using controlled substances (Fentanyl, Norfentanyl, and Cannaboids) on May 3, 2023, July 15, 2023, March 12, 2024, and December 16, 2024. |
| 3. | If directed by the probation office, you must submit to substance abuse testing to determine if you have used a prohibited substance.  You must not attempt to obstruct or tamper with the testing methods. (Special Condition) | Failing to submit to substance abuse testing as instructed on February 20, 2024, March 28, 2024, April 10, 2024, April 30, 2024, May 8, 2024, May 21, 2024, May 24, 2024, June 11, 2024, June 27, 2024, January 14, 2025, February 18, 2025, March 4, 2025, March 5, 2025, and April 9, 2025. |
| 4. | You must not unlawfully possess a controlled substance. (Mandatory Condition) | Possessing controlled substances (Fentanyl, Norfentanyl, and Cannaboids) on May 3, 2023, July 15, 2023, and March 12, 2024. |
| 5. | You must participate in an inpatient and/or outpatient substance abuse treatment program and follow the rules and regulations of that program. (Special Condition) | Failing to comply with his mandated substance abuse treatment on December 29, 2023 and September 27, 2024. |

*See* ECF Nos. 38 at 2–3; 53 at 2.

5

IV.        **Resolution on Supervised Release Violations**

At a status conference on May 21, 2025, the Parties advised the Court that they had reached a partial resolution of the Updated Petition.  Mr. Fuller would concede to Violation No. 2, and the Government would dismiss the remaining allegations.  *See* Min. Entry (May 21, 2025).  The Government represented that it would not argue that Mr. Fuller's violations required mandatory revocation.  Given the Parties' agreement, the only remaining issue is the appropriate sentence for Violation No. 2.  The Court heard argument on July 10, 2025.  Min. Entry (July 10, 2025).

<u>ANALYSIS</u>

I.        **Legal Standard**

District courts have broad discretion to oversee a defendant's supervised release.  *See United States v. Russell*, No. 05-cr-272, 2022 WL 1473685, at *2 (D.D.C. Apr. 25, 2022), *R. & R. adopted*, 2022 WL 1471420 (D.D.C. May 10, 2022).  Under Federal Rule of Criminal Procedure 32.1, the Court must hold a hearing on a defendant's alleged violations before revoking or modifying his supervised release.  Fed. R. Crim. P. 32.1.  Under 18 U.S.C. § 3583(e), several options are available to address violations.  The Court may revoke supervised release if the Court finds by a preponderance of the evidence that the defendant violated a condition.  18 U.S.C. § 3583(e)(3).  The Court can only require a defendant to serve a term of incarceration that is all or part of the term of supervised release, without credit for time previously served.  *Id.*  The Court may extend the term of supervised release if the Court previously imposed supervised release for less than the maximum authorized term.  *Id.* § 3583(e)(2).  Finally, the Court may terminate supervised release (after the defendant serves one year of supervised release) if the Court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  *Id.* § 3583(e)(1).

Additionally, the Court must consider certain factors before revoking or terminating supervised release. *Id.* § 3583(e). The following factors set forth in 18 U.S.C. § 3553(a) apply:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . (4) the kinds of sentence and sentencing range established for . . . (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . (5) any pertinent policy statement (A) issued by the Sentencing Commission . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

## II.    Discussion

Mr. Fuller has confirmed that he concedes Violation No. 2. ECF No. 63 at 6. Accordingly, this Court finds that Mr. Fuller did, in fact, use controlled substances on four dates: May 3, 2023; July 15, 2023; March 12, 2024; and December 16, 2024. *See* ECF Nos. 38 at 2; 53 at 2. It is important to note that, as of the date of this Report and Recommendation, there are no allegations that Mr. Fuller has engaged in any violent or alleged new criminal conduct, including conduct similar to that underlying his conviction.

The Government seeks revocation and an eight-month sentence of reincarceration. ECF No. 61 at 4. The Government has conceded that Mr. Fuller's violations do not trigger mandatory revocation under 18 U.S.C. § 3583(g).[3] Nonetheless, the Government argues that an eight-month

---

[3]    Revocation is mandatory if a defendant "as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year." 18 U.S.C. § 3583(g)(4). Mr. Fuller's four positive test results occurred between May 2023 and December 2024, which is a period greater than one year.

sentence would serve two purposes: 1) to punish Mr. Fuller for his material noncompliance with his conditions; and 2) to deter Mr. Fuller and others from similar repeated noncompliance in the future. *See id.* Probation recommends a four-month sentence of reincarceration. ECF No. 62 at 1. Mr. Fuller argues that the Court should terminate his supervised release based on his progress since completing his term of incarceration. *See* ECF No. 63 at 1, 9. In the alternative, Mr. Fuller argues that the Court should continue him on supervised release until his term expires in October 2025. *Id.* at 11.

Mr. Fuller committed Grade C violations. *See* U.S.S.G. § 7B1.1(a)(3); ECF Nos. 61 at 3; 63 at 2. Based on these violations and his Criminal History Category of VI, the Sentencing Guidelines provide a range of eight to fourteen months of imprisonment. U.S.S.G. § 7B1.4(a); *see* ECF Nos. 38 at 3; 61 at 2. The Sentencing Guidelines are, of course, advisory. *See United States v. Turner*, 21 F.4th 862, 864 (D.C. Cir. 2022) (citing *United States v. Booker*, 543 U.S. 220, 245 (2005)). Upon close consideration of the Section 3553(a) factors, this Court recommends that the District Court deny the request of the Government and Probation to sentence Mr. Fuller to an additional term of incarceration. The Court also recommends that the District Court deny Mr. Fuller's request for an early termination of his sentence. Instead, Mr. Fuller should remain on supervised release with the conditions that the Court ordered in his original sentence.

### A.    Applicable Section 3553(a) Factors Weigh Against Reincarceration

*First*, the Government's principal argument is that deterrence weighs in favor of reincarceration. *See* 18 U.S.C. § 3553(a)(2)(B). Under this theory, reincarceration may deter Mr. Fuller from violating his conditions of supervised release. In this case, however, it is undisputed that Mr. Fuller's violations resulted from his chronic struggles with substance use disorder. Although Mr. Fuller has had relapses, the record reflects that he has also made significant strides

in voluntarily seeking addiction and mental health treatment, attempting to battle the disorder, and otherwise abstaining from further criminal conduct.  Because he has made progress in obtaining treatment and achieving stability in his life, the deterrent effect of any period of reincarceration would be minimal.  If anything, in this case, a period of reincarceration would likely wipe away the hard-earned progress he has achieved.

*Second*, a sentence of reincarceration will not "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).  To the contrary, as stated above, reincarceration will negatively impact the significant progress Mr. Fuller has made to date.  Based on the undisputed facts, Mr. Fuller has successfully transitioned into community life in many ways.  *See United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Congress intended supervised release to assist individuals in their transition to community life.").  Mr. Fuller has completed the Federal City inpatient treatment program.  *See* ECF Nos. 63 at 3, 10; 43 ¶ 2; Min. Entry (Oct. 28, 2024).  He continues to receive weekly outpatient drug treatment at MBI Health Services and weekly mental health treatment at New Hope Health Services.  ECF Nos. 63 at 3–4, 10; 46 at 2; Min. Entry (July 10, 2025).  He graduated from the Project Empowerment job readiness program and is currently employed in a full-time position with the D.C. Department of General Services.  ECF No. 63 at 5; 46 at 2.  Finally, he has stable housing.  *Id.* at 4; Min. Entry (Feb. 3, 2025).  If the Court sentenced Mr. Fuller to a period of reincarceration, Mr. Fuller would lose his job and access to his current medical care.  Further, the period of reincarceration would surely introduce significant instability into Mr. Fuller's life.

*Third*, the history and characteristics of Mr. Fuller weigh against reincarceration.  *See* 18 U.S.C. § 3553(a)(1).  The Supreme Court has recognized that evidence of a defendant's

conduct "since his initial sentencing constitutes a critical part of the 'history and characteristics' of a defendant that Congress intended sentencing courts to consider." *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)).  The evidence of Mr. Fuller's progress since his release from prison is relevant to this factor.  Moreover, it is undisputed that Mr. Fuller has not committed any crimes (besides unlawful use of controlled substances) while on supervised release.  ECF No. 63 at 5.  Accordingly, on balance, the factors do not weigh in favor of an additional period of incarceration.

### B.    Early Termination is Inappropriate

Neither Mr. Fuller's conduct nor the interests of justice warrant terminating his supervised release at this time.  *See* 18 U.S.C. § 3583(e)(1).  Although Mr. Fuller has made strides since he completed his term of incarceration, he has also faced setbacks.  His supervised release is set to expire on October 12, 2025, which is in less than three months.  ECF No. 38 at 1.  This additional period will continue to provide the supervision and additional structure and assistance Mr. Fuller needs to transition into community life.  *See Johnson*, 529 U.S. at 59.  Accordingly, Mr. Fuller should serve the remaining three months and abide by the original conditions that the Court previously imposed.

### <u>CONCLUSION</u>

For the foregoing reasons, this Court recommends that the District Court deny the requests of the Government and Probation to sentence Mr. Fuller to a period of reincarceration; and that the District Court order that Mr. Fuller continue his supervised release until his term expires.

**SO ORDERED.**

Date:   August 1, 2025

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

## **Local Criminal Rule 59.2(b) Notice**

The Parties are hereby advised that under Local Criminal Rule 59.2(b), any party who objects to the proposed findings or recommendations herein must file written objections within fourteen days of being served with a copy of the Report and Recommendation.  Objections must specifically identify the portion of the recommendation to which the objection pertains and the basis for the objection.  The Parties are further advised that they may waive their right of appeal from an order of the District Court adopting such findings and recommendations if the Parties fail to file timely objections to the findings and recommendation set forth in this Report.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

* * *